## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**UNITED STATES OF AMERICA**

**v.**                                                      **Cr. No. H-12-731**

**ASHLEY NICOLE RICHARDS**
**BRENT JUSTICE**

## MOTION TO DISMISS

Brent Justice moves the Court to dismiss the charges pending against him in Counts One through Five of the Indictment because the statute underlying these Counts, 18 U.S.C. § 48, violates the First Amendment to the United States Constitution.

I.      Background.

The Supreme Court struck down the predecessor statute to the current version of 18 U.S.C. § 48 in United States v. Stevens, 130 S. Ct. 1577 (2010).  The earlier version of the statute had prohibited the creation, sale, or possession of a depiction of animal cruelty with the intent of placing the depiction in interstate commerce. A "depiction of animal cruelty" was defined as including depictions of causing harm to animals when the acts depicted were illegal under federal or state law in the jurisdiction of the depiction's creation, sale, or possession.  Finally, the statute

exempted from its prohibition depictions having serious artistic, educational, or similar benefit.  18 U.S.C. § 48 (2009).

The Court held that the statute was unconstitutionally overbroad for a number of reasons.  First, the statute was not limited to depictions of cruelty to animals; it also included wounding or killing.  Id. at 1588.  Second, depictions of conduct illegal in one jurisdiction might easily depict lawful conduct in another.  For example, hunting is entirely illegal in the District of Columbia, and thus possession of depictions of hunting would be largely prohibited there.  Id. at 1588-89.  The Court squarely rejected the government's argument that depictions of animal cruelty "are categorically unprotected by the First Amendment."  Id. at 1584.  And, the Court declined to consider "whether a statute limited to crush videos or other depictions of extreme animal cruelty would be constitutional."  Id. at 1592.

Congress swiftly responded to the Stevens decision.  It passed and, on December 9, 2010, the President signed a bill amending Section 48.  The current version of the statute sets forth a two-part definition of "animal crush video."  The phrase includes

> any photograph, motion-picture film, video or digital recording, or electronic image that –
>
>> (1) depicts actual conduct in which 1 or more living non-human mammals, birds, reptiles, or amphibians is intentionally crushed,

2

> burned, drowned, suffocated, impaled, or otherwise subjected to
> serious bodily injury . . . ; and
>
> (2) is obscene.

18 U.S.C. § 48(a).  The statute prohibits the creation or distribution of such a video when there is a connection with interstate commerce.  18 U.S.C. § 48(b).  It does not apply, however, to depictions of: "(A) customary and normal veterinary or agricultural husbandry practices; (B) the slaughter of animals for food; or (C) hunting, trapping, or fishing."  18 U.S.C. § 48(e)(1).  Anyone convicted of violating this statute is subject to up to seven years' imprisonment.  18 U.S.C. § 48(d).

In contrast, Congress has long punished with a term of up to five years' imprisonment the lesser-included offense of producing and transporting for sale obscene matter.  18 U.S.C. § 1465; see also Count Seven.  In effect, the sale, distribution, or creation of an obscene item which also includes a depiction of the causation of serious bodily injury or similar conduct to a listed animal subjects a defendant to an additional, possible two years' imprisonment.

II.   Mr. Justice's Facial Challenge to Section 48 is Authorized.

As an initial matter, Mr. Justice notes that the Supreme Court has routinely approved of facial challenges to content-based regulations.  Accordingly, his facial challenge to Section 48's content-based law is permissible.

3

For example, in <u>R.A.V. v. City of St. Paul, Minn.</u>, 505 U.S. 377 (1992), the Court upheld a facial challenge to a content-based law regulating the use of fighting words brought by a criminal defendant who had, in fact, used fighting words. <u>Id</u>. at 379-81. Subsequently, in <u>Virginia v. Black</u>, 538 U.S. 343 (2003), the Court gave full review to, but rejected, a facial challenge to an anti-cross-burning statute brought by individuals charged with burning a cross on another's lawn with the intent to intimidate. And, most recently, in <u>Brown v. Entertainment Merchants Ass'n</u>, 131 S. Ct. 2729 (2011), the Court upheld a pre-enforcement facial challenge on First Amendment grounds to a statute imposing various restrictions on the sale of violent video games. <u>See also</u> <u>Reno v. American Civil Liberties Union</u>, 521 U.S. 844, 868 (1997) (finding that Communications Decency Act was "a content-based restriction" before holding it facially unconstitutional).

In short, the Supreme Court routinely permits facial challenges under the First Amendment to content-based statutes, such as 18 U.S.C. § 48.

III.   Section 48 Is Content-based Discrimination and Is Facially Unconstitutional Under the First Amendment.

The Supreme Court has long held that content-based discrimination is presumptively unconstitutional. <u>See</u>, <u>e.g.</u>, <u>Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.</u>, 502 U.S. 105, 115 (1991); <u>Consolidated Edison Co.</u>

of N.Y., Inc. v. Public Serv. Comm'n of N.Y., 447 U.S. 530, 536 (1980); Police Dep't

of City of Chicago v. Mosley, 408 U.S. 92, 95 (1972) ("But, above all else, the First

Amendment means that government has no power to restrict expression because of

its message, its ideas, its subject matter, or its content."). In its current form, Section

48 imposes enhanced penalties on depictions based solely on their content, and it is

thus in violation of the First Amendment.

      The fact that Section 48 is limited to depictions of obscenity does not take the

depictions outside the protections of the First Amendment. The Supreme Court has

already squarely rejected this argument. In R.A.V. v. City of St. Paul, Minn., the

Court considered a local ordinance which prohibited the use of "fighting words"

based upon "race, color, creed, religion, or gender . . . ." 505 U.S. 377, 380 (1992)

(citations and quotation of local ordinance omitted). The state argued that, because

the ordinance applied only to fighting words, the First Amendment was entirely

inapplicable, and the state could therefore freely regulate their use. Id. at 383-84.

      The Court rejected this argument. It explained that areas of speech such as

fighting words, defamation, and obscenity are not "categories of speech entirely

invisible to the Constitution." Id. at 383. Thus, they may "be regulated **because of**

**their constitutionally proscribable content** . . . , [but they may not] be made the

vehicles for content discrimination unrelated to their distinctively proscribable

content." Id. at 383-84 (emphasis in original).  Applying this principle to the local ordinance, the Court struck it down as facially unconstitutional because of impermissible content-based discrimination.  In particular, the Court was troubled that the content-based discrimination was unrelated to the characteristics of fighting words which make that entire category of speech subject to regulation; under the local ordinance, "[d]isplays containing abusive invective, no matter how vicious or severe, are permissible unless they are addressed to one of the specified disfavored topics." Id. at 391.  Despite the ordinance's limitation to fighting words, the Court held that "[t]he First Amendment does not permit St. Paul to impose special prohibitions on those speakers who express views on disfavored subjects." Id. (citations omitted).

The Court's subsequent decision in Virginia v. Black, 538 U.S. 343 (2003), provides a useful counter-point of permissible content-based discrimination.  In Black, the Court considered another content-based prescription of certain expressive activity – cross burning.  Id. at 347, 359-60.  The Court upheld the prohibition against cross burning because, as presaged in R.A.V., see R.A.V., 112 S. Ct. at 2538, a state may constitutionally "choose to prohibit only those forms of intimidation that are most likely to inspire fear of bodily harm." Black, 538 U.S. at 363.  In light of the history of cross burning in the United States, see id. at 352-57, it is such "a

particularly virulent form of intimidation" and a permissible basis for content-based discrimination.  Id. at 363.

On the other hand, the content-based discrimination of Section 48 is akin to that addressed in R.A.V. and unconstitutional.  R.A.V. itself described when content-based discrimination within the category of obscenity might be constitutional.  The Court hypothesized that "[a] State might choose to prohibit only that obscenity which is the most patently offensive **in its prurience** – i.e., that which involves the most lascivious displays of sexual activity."  R.A.V., 505 U.S. at 388 (emphasis in original).  The Court also suggested that laws could constitutionally be drafted to prohibit obscenity only in certain media or markets because those laws "would not discriminate on the basis of content."  Id. at 387.  Section 48 follows neither of these permissible paths.

Section 48 imposes an enhanced, content-based penalty on obscenity based on the unrelated factor of whether a depiction includes some causation of serious bodily injury to an animal.  Despite the statute's use of the phrase "animal crush video", it includes no requirement that the injury to the animal even be related to the obscene content of the depiction.  Nor is there any requirement that the injury to an animal be designed to appeal to a viewer's prurient interest.  If both obscenity and a serious

bodily injury to an animal occur in entirely separate parts of some depiction, a defendant will nonetheless be subject to the stiffer statutory penalties of Section 48.

Importantly, Section 48 also includes no requirement that the causation of serious bodily injury to an animal be illegal where the injury occurred. In <u>Stevens</u>, the Court had said "that the 'crush-video' statute at issue there might pass muster if it were limited to videos of acts of animal cruelty that violated the law where the acts were performed." <u>Brown</u>, 131 S. Ct. at 2734 n.1 (citing <u>Stevens</u>, 131 S. Ct. at 1592). Instead of following this course when amending Section 48, Congress has employed a definition of "animal crush video" which includes no requirement that the conduct toward an animal be illegal. And, as in <u>Stevens</u>, 130 S. Ct. at 1588, amended Section 48 continues to lack any requirement that the conduct toward animals in fact be cruel.

Far from being the "most patently offensive in its prurience" species of obscenity, depictions of the causation of injury to animals fall outside the courts' definition of obscenity. In <u>Miller v. California</u>, 413 U.S. 15 (1973), the Supreme Court defined obscenity as, among other things, "portray[ing] **sexual conduct** in a patently offensive way . . . ." <u>Id</u>. at 24 (emphasis added). The Court provided a number of examples of the types of depictions which would fall within this definition:

> (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

Id. at 25. While these are examples and not an exhaustive list, they are illustrative of the type of depictions included as obscenity. Cf. Begay v. United States, 553 U.S. 137, 142-43 (2008) ("In our view, the provision's listed examples . . . illustrate the kinds of crimes that fall within the statute's scope.") The causation of injury to animals is not similar to the listed examples.

The government cannot expand the definition of obscenity. Just two Terms ago, in Brown v. Entertainment Merchant's Ass'n, 131 S. Ct. 2729 (2011), the Court rejected a legislature's attempt to shoehorn non-sexual, distasteful depictions under the rubric of obscenity. There, a state legislature had sought to regulate violent video games. The Court held that these fell outside its definition of obscenity: "Our cases have been clear that the obscenity exception to the First Amendment does not cover whatever a legislature finds shocking, but only depictions of 'sexual conduct.'" Id. at 2734 (citations omitted). And, in Brown, the Court reiterated its holding from Stevens that legislatures may not add new categories of unprotected speech to the list of speech "too harmful to be tolerated." Id. (citing Stevens, 130 S. Ct. at 1585).

The Fifth Circuit's pattern jury instructions largely follow the Miller formulation. They tell a jury to apply three tests when determining whether some

9

material is obscene.  "The second test is whether the material depicts or describes, in a patently offensive way, sexual conduct such as ultimate sexual acts, normal or perverted, actual or simulated; masturbation; excretory functions; or lewd exhibition of the genitals."  Fifth Cir. Pattern Jury Instr. § 2.62 (2001).  Section 48 is not targeted at the most serious concerns in this list.

In short, obscenity has to do with sex, and Section 48's content-based proscription can thus only be justified in relation to its regulation of depictions of sexual conduct.  Section 48, however, imposes a content-based penalty because of an entirely separate concern – the causation of injury to an animal.  18 U.S.C. § 48(a)(1).

The exceptions to Section 48's coverage further aggravate its content-based penalties.  Section 48 excludes from its scope depictions which are the most patently offensive in their prurience and which include the causation of serious bodily injury to a live animal as long as the injuries to animals are caused in favored ways, such as husbandry, slaughter for food, or hunting.  18 U.S.C. § 48(c)(1).

In contrast, an obscenity which includes the causation of serious bodily injury to an animal in less favored ways subjects a defendant to Section 48's enhanced penalties.  For example, an obscene depiction which includes the causation of serious bodily injury to an animal in the course of cosmetic or medicinal testing falls outside Section 48's safe harbor provision.  Similarly, an obscene depiction including the

10

causation of serious bodily injury by docking a dog's tail or cropping its ears falls outside Section 48's safe harbor provision. Thus, speakers on favored topics (i.e., hunting, husbandry, or slaughter for food) do not risk the enhanced penalties under Section 48, while speakers on disfavored topics (i.e., cosmetic or medical testing on animals, surgical alteration of dogs' bodies) do.

As in R.A.V., "[t]he dispositive question in this case . . . is whether content discrimination is reasonably necessary to achieve [the government's] compelling interests; it plainly is not." 505 U.S. at 395-96. Congress has already prohibited the creation and distribution of obscenity affecting interstate commerce. See 18 U.S.C. § 1465. "In fact the only interest distinctively served by the content limitation is that of displaying [the government's] special hostility towards the particular biases thus singled out." Id. at 396. The First Amendment prohibits this content discrimination.

Because the statute under which Counts One through Five are brought is unconstitutional, Mr. Justice respectfully requests that the Court dismiss these counts of the indictment.

Respectfully submitted,

MARJORIE A. MEYERS
Federal Public Defender
Southern District of Texas
Texas Bar No. 14003750
Southern District of Texas No. 3233

By /s/ Philip G. Gallagher
PHILIP G. GALLAGHER
Assistant Federal Public Defender
Attorney in Charge
New Jersey State Bar ID No. 2320341
Southern District of Texas No. 566458
Attorneys for Defendant
440 Louisiana, Suite 1350
Houston, Texas   77002-1669
    Telephone:  713.718.4600
    Fax:      713.718.4610

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 22, 2013, a copy of the foregoing  was served by electronic filing upon all parties of record.

/s Philip G. Gallagher
PHILIP G. GALLAGHER

12